## WILLIAM STAGE v. C. H. YOUNG COMPANY.[1]

January 3, 1913.

Nos. 17,910—(133).

**Negligence of fellow servant.**
> Evidence examined, and *held* to show that the cutting of grab hook holes in blocks of stone sawed and dressed in defendant's stone-dressing factory was a necessary detail of the work carried on therein, and that the cutting of such hole by a servant of defendant in a defective part of a stone, so that when lifted it broke, and in falling injured plaintiff, also a servant of defendant, was the negligence of a fellow servant, for which the defendant is not liable.

**No evidence of defect in crane.**
> Also *held*, that there is no evidence in the record from which an inference could fairly be drawn that an alleged defect in the traveling crane, which carried the stone when it fell, in any manner contributed to the accident.

Action in the district court for Ramsey county to recover $15,000 for personal injuries. The answer alleged that the injuries were sustained on account of plaintiff's negligence; that he knew, appreciated and assumed each and every hazard in any manner connected with the work that in any manner caused or contributed to the accident. The case was tried before Dickson, J., who, at the close of plaintiff's case, granted defendant's motion to dismiss the action. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

[1] Reported in 139 N. W. 298.

*James R. Hickey, James A. Martin* and *Ray G. Farrington,* for appellant.

*Price Wickersham,* for respondent.

HOLT, J.

This is an appeal by plaintiff in a personal injury action from an order denying his motion for a new trial; there having been dismissal on motion of defendant after plaintiff had introduced his evidence.

Plaintiff had been in the employ of the defendant for more than a year in operating a traveling crane in the stone-dressing factory of defendant in St. Paul, Minnesota. At the time plaintiff was injured, defendant was engaged in sawing and dressing limestone from the Mankato quarries for the erection of the new state penitentiary at Stillwater. Some of these stones were large blocks, weighing several tons. In loading the large stones on the flat cars at the quarries, it was necessary to cut holes therein, so that the derrick grabhooks used in lifting them could catch hold. The unloading of these large blocks in the yard adjoining the factory in St. Paul, and again the loading thereof on the tram cars to convey them to the different machines and places in the factory, required the use of these holes for the grab-hooks of the hoisting appliances, or, if those cut at the quarry were not suitable, defendant's derrickmen would cut holes at the proper place for handling at the factory.

The building in which defendant cut and dressed these stone blocks was upwards of 250 feet long. On one side the entire length was traversed by a traveling crane run by electricity on rails from 15 to 18 feet above the floor and 27 feet apart. From this crane grab-hooks were suspended, with chains and cables attached, operated by air pressure, so that heavy weights could, by means of the same, be lifted up to any desired distance between the floor of the factory and this crane. The rails on which the crane traveled ran north and south, and, of course, the beams constituting the bearing part of the crane were at right angles with the rails. Upon these bearing beams a contrivance on rollers, which could be pushed east or west between the rails, held the lifting cable. Even when stones weighing more than

two tons were suspended, a couple of men could push the load east or west on the crane beams. When it was desired to move the suspended load north or south, after it was in the proper position east or west, plaintiff pulled one of the two cords hanging down from the crane near the west rail. By pulling one cord, the crane with the suspended load traveled north; and by pulling the other, it traveled south. The speed of the crane was that of a slow walk, so that plaintiff had no difficulty to follow and stop it where desired.

The defendant employed one Strom as a foreman in the yard of the factory, who saw to the unloading of the cars which brought the stones from the quarries, selected the stones to be sawed or dressed, in some cases indicating by crayon marks on the stones the manner in which they were to be trimmed or cut, and who generally looked after the work outside the factory. He had experienced men under him, who attended to the actual labor required. Another foreman was employed in the factory, directing the work therein.

On the day of the accident a large stone was among the ones sent in from the yard to be dressed. It is claimed by plaintiff that as it lay flat on the ground in the yard, after the sides and edges were cut, it was 8 feet long, 4 feet wide, 1 foot thick, and weighed about 4,700 pounds. It became necessary to take it into the factory to trim around the edges, and, there being no grab holes, the derrickmen cut one in each end about 8 inches from the edge of one side as the stone lay on the ground. Thereupon it was hoisted by derrick and grab-hooks, and laid flat side down on a tram car, and pushed into the factory under the east rail of the crane. Then the foreman signaled plaintiff to move the stone from the car to a place about 150 feet north in the factory. He moved the crane to the stone, inserted the grab hooks in the places cut for them, and hoisted the stone to the height desired. The plaintiff had some difficulty in pushing the stone over towards the west rail of the crane, in which position it was to be moved north, because of an alleged defect in the apparatus near the center of the beams of the crane, and had to call another workman to his assistance. After plaintiff got the stone past this obstruction, the crane was by him started north and stopped at the place desired. As he was in the act of lowering the stone to the ground, a

piece broke off of one corner, where the grab hook hole was, and the stone fell. In the fall, plaintiff, who stood near by, was caught between the stone and a pile of marble slabs, breaking his leg.

The negligence charged against defendant, and relied on in this appeal, relates to the defect in the stone where the hole was made for the grab hook, and to the obstruction to the rollers of the hoisting cable near the center of the supporting beams of the crane. The trial court was of the opinion that, if it was negligence to place the grab hook hole where it was placed because of the defect or unsoundness of that part of the stone, it was the negligence of a fellow servant, and also that there could be no inference that the mentioned defect in the crane in any manner caused the stone to break and fall.

The complaint alleged that the place for the grab hook holes was designated by defendant's foreman, Strom; that moving these large blocks of stone involved great danger to the men employed; and that defendant and its foreman and superintendent in this instance failed to inspect the stone and ascertain that the place where the grab hook hole was cut was rotten. It is self-evident that the handling of heavy blocks of stone by derricks, cranes, and other appliances is at all times fraught with danger. The giving way of any part of the instrumentalities used, or the part of the stone to which these are temporarily attached, means almost certain disaster to the men that happen to be near, or to the appliances used. The evidence is absolutely silent on the proposition that defendant, by Strom, or any other foreman or superintendent, designated, supervised, or inspected the placing of grab hook holes in the stone blocks handled in the yard or factory. No other conclusion can be drawn from the record than this:

That when there were no grab hook holes in the stones, or those placed in them at the quarries were not suitable for handling the stones in the yard or factory, the derrickmen or some other servants cut the holes where they deemed proper, and that these men who so cut the holes were experienced men, and knew where to place the holes, either from the size and shape of the stone when cut, or from knowledge of how the stone was to be cut, or else from markings made by the foreman, Strom, as to the manner in which the stone was to

be cut up or dressed. The cutting of these holes was, therefore, a necessary detail of the work of dressing stone carried on by defendant, and can in no sense be held to be an instrumentality furnished by the master with which to do the work. The men selected the place to cut. They might select a weak place or a strong place in the stone, just as if there had been different kinds of grab hooks or chains provided for lifting, and the weaker had been selected instead of the stronger.

Furthermore, although the defendant's president testified to the fact that danger attends the work in the factory and the movement by machinery of heavy stone blocks, there is no evidence that the holes in this stone were not in the ordinary place, or that the stone was of an unusual size or weight, or that the grab hooks had ever before become detached because of defects in the stone or the holes, so there is nothing in the record upon which to predicate negligence in not inspecting the stones to determine a safe place for the grab holes. We conclude that providing these holes was a necessary detail in cutting and dressing the stones in this factory, which the master could place in the hands of competent servants, and, further, that the evidence fails to show that the proper placing of these holes was a work so dangerous, affecting the safety of the men in the factory, that the defendant owed them a master's nondelegable duty of inspection. The pleadings do not raise the issue of the competency of the derrickmen to select and cut these holes.

It is true that, even if defendant cannot be held for the negligence of plaintiff's fellow servant in placing the grabhook hole in a defective part of the stone, still, if it can be said that there was a debatable question on this record whether or not the alleged defect in the crane contributed in any manner to the accident, the case should have gone to the jury. See cases cited in 2 Dunnell, Minn. Digest, under section 5952. But we agree with the trial court that it would be so improbable a conjecture that the extra force which plaintiff and a fellow servant exerted in pushing the suspended stone over the alleged defect on the crane beams helped to break it that no verdict should be permitted to rest thereon. It is incredible that two men could so push a weight of 4,600 pounds suspended from a cable about

120 M.—14.

10 feet long that any appreciable increased strain should come upon the grab hook holes by reason of any surging or swaying of the stone after the rollers on the crane passed the obstruction of the beam.

We are of opinion that the evidence fails to show any negligence as the proximate cause of the accident for which defendant is legally responsible.

Order affirmed.